IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| SPECTRUM BRANDS, ET. AL )<br>)<br>Plaintiff, )<br>v. )<br>)<br>THE PARTNERSHIPS AND )<br>UNINCORPORATED ASSOCIATIONS )<br>IDENTIFIED ON SCHEDULE "A". )<br>)<br>Defendants. )<br>) | Case No.: 24-cv-04849<br><br>Judge: Hon. John J. Tharp., Jr.<br>Magistrate: Hon. Maria Valdez |

**DEFENDANT PETBOBI'S MOTION TO MODIFY ASSET RESTRAINT UNDER THE TEMPORARY RESTRAINING ORDER**

Defendant Petbobi ("Petbobi"), by and through the undersigned counsel, files this motion requesting that the Court amend the asset-restraint portion of the temporary restraining order as it applies to Petbobi. For the reasons set forth herein, Defendant Petbobi respectfully requests that the Court grant this motion to amend the asset-restraint portion of the temporary restraining order issued by the Court.

**I.      Applicable Facts**

Plaintiff filed this action alleging Defendant Petbobi infringed US Patent No. 8,960,129 ("the '129 patent"), which covers a pet grooming product. Plaintiff obtained a temporary restraining order against Petbobi and the other Schedule A defendants, including an asset restraint order, entered on July 8, 2024. [Dkt. No. 33].

Petbobi made 152 sales of the Accused Product to the United States. *See* Declaration of Hongliang Ye, Exhibit A. The total revenue received by Petbobi for the sale of this product was **$9,142**. *Id*. Petbobi did not make any profits on the product, instead realizing a **loss** of **$7578.** *Id*. The amount currently frozen under the TRO in this case is **$86,262.73**. *Id*.

Attached as Exhibit A to Ye's Declaration is all backend sales data for the accused product, in screenshot form, generated from the Amazon and Tik Tok platforms. *Id.*, Ex. A. The documentation confirms Petbobi's total sales are $9,142.

## II. Legal Standard

Courts are limited in their ability to restrain assets—rather than behavior—before judgment. *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013). District courts "generally do not have the authority to preliminarily restrain assets where a plaintiff seeks a money judgment." *Id.* (*citing Grupo Mexicano de Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 331 (1999)). One exception to that general rule is where a plaintiff seeks an equitable remedy—like a disgorgement of profits. *Id.* However, "the appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief." *Id.* "[I]f the amount of the profits is known, then the asset freeze should apply on[ly] to that specific amount, and no more." *Id.* On the other hand, "[t]o exempt assets from an asset freeze, the burden is on the party seeking relief to present documentary proof that particular assets are not the proceeds of counterfeiting activities." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) (quotation marks and brackets omitted).

## III. Analysis

The asset-restraint portion of this Court's order is disproportional and not equitably applied to Defendant Petbobi in this case. Defendant Petbobi sold 152 units of the allegedly infringing item, as verified by the backend sales data from Tik Tok and Amazon. The total revenue was only $9,142. Defendant did not sell the accused product on any other platform or sales channel. Defendant did not make a profit on the alleged product, realizing a **loss** of $7,578. The amount of lost profits made by Petbobi (-$7,578) obviously cannot exceed the revenue of $9,142. The asset freeze in this case should not apply to any more than the total revenue.

Further, Plaintiff received comprehensive sales data from Amazon pursuant to its

expedited discovery request granted by the TRO confirming that Petbobi's sales were relatively insubstantial. Accordingly, the large amount frozen (**$86,262.73**) under the TRO in this case is clearly not derived from the proceeds of any alleged counterfeiting activities by Petbobi. For this reason, Petbobi respectfully requests that the asset freeze order be amended so that the amount frozen under the TRO is no more than $2000—this number represents a compromise on Petbobi's part, as *no* money should be restrained under *Grupo Mexicano de Desarrollo*, given that Petbobi in fact lost money on the accused products.

### IV. Conclusion

For the reasons set forth, herein, Defendant Petbobi requests that the asset freeze portion of the asset restraining order be amended and limited only to $2000 as a reasonable compromise solution to the asset restraint issue.

Dated this August 2, 2024

Respectfully submitted,

By:/s/ Pete Wolfgram
Pete Wolfgram
STRATUM LAW LLC
2424 E. York St. Ste. 223
Philadelphia, PA 19125
pwolfgram@stratumlaw.com
*Counsel for Defendant Petbobi*